UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JESUS ALCALA, MARIA ALCALA, JOSE HUERTA, and MICAELA MEDINA, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | 05 C 3683 Judge George M. Marovich |
| VINCENZO TOTARO, MARIA TOTARO, ROCKY CARUSO, GARY LUNDEEN, AUDREY LIVERTON, ATTORNEYS' TITLE GUARANTY FUND, INC., MARY LYNN CHLADA and THE TOWN OF CICERO, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Jesus Alcala ("Mr. Alcala"), Maria Alcala ("Mrs. Alcala") (together, the "Alcalas"), Jose Huerta and Macaela Medina filed a nine-count complaint against Vincenzo Totaro ("Mr. Totaro"), Maria Totaro ("Mrs. Totaro") (together, the "Totaros"), Rocky Caruso ("Caruso"), Gary Lundeen ("Lundeen"), Audrey Liverton ("Liverton"), Attorneys' Title Guaranty Fund, Inc., Mary Lynn Chlada ("Chlada") and the Town of Cicero ("Cicero" or the "Town").

Two defendants, Chlada and Cicero, have moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing plaintiffs' four claims against them. For the reasons set forth below, the Court denies defendants' motion to dismiss.

I.      **Background**

For purposes of this motion to dismiss, the Court takes as true the allegations in the complaint. The alleged facts relevant to this motion are described below.

Jesus and Maria Alcala, a married couple, were looking to purchase a home with an attached apartment so that they could house Mrs. Alcala's parents, plaintiffs Jose Huerta and Micaela Medina. In February 2002, the plaintiffs made an offer for a property (the "Property") owned by the Totaros. On February 27, 2002, Mr. Alcala, Huerta, Medina and the Totaros signed a contract for the Property, which contract provided that the Totaros would convey title to the premises to Mr. Alcala, Huerta and Medina in a recordable general warranty deed.

The Property at issue is located in the Town of Cicero. Cicero is involved in every real estate transaction within its borders by virtue of a transfer tax it imposes on real estate transfers. The payment of the transfer tax is evidenced by the adhesion of a Transfer Stamp to the face of the deed. The deed cannot be recorded without the Transfer Stamp. In order to obtain a Transfer Stamp, the seller must obtain a Certificate of Compliance from the Building Commissioner, defendant Chlada. The Building Commissioner is supposed to issue the Certificate of Compliance only after the property is inspected and found to be in full compliance with Cicero's housing code, building code, electrical code and plumbing code, among others. Alternatively, a seller can obtain a Transfer Stamp if the purchaser submits a notarized affidavit that he or she is aware of the code violations.

According to the complaint allegations, the Property never received a Transfer Stamp. The difficulty seems to have started with the inspection. The Property was inspected on March 5, 2002 by two Cicero inspectors, Ramiro Leon ("Leon") and Abner Vazquez ("Vazquez"). The two drafted an inspection report noting such code violations as exposed wiring, an uncapped gas line, missing Ground Fault Circuit Interrupters and an illegal basement apartment. Mr. Totaro's son-in-law, defendant Caruso (who is alleged to have given campaign contributions to Cicero

politicians), was present at the inspection and insisted that Leon and Vazquez write up a "clean" report that did not mention any of the code violations. When Leon refused, Caruso asked Leon if he knew who Caruso was and threatened him. When Leon continued to refuse to draft a "clean" report, Caruso telephoned Building Commissioner Chlada for assistance. Chlada spoke to Leon, asking him whether he liked his job and warning him that he needed to write a "clean" report if he wanted to retain his job. Leon declined to write a "clean" report, and plaintiffs do not know what happened to the original report. (Mr. Alcala claims that he was not allowed to attend the inspection. Instead, it was not until the fall of 2004 (when they were informed by Leon) that plaintiffs learned that Chlada threatened Leon and that Leon had found code violations at the March 2002 inspection.)

At the closing, plaintiffs' attorney noticed that the deed did not contain a Transfer Stamp, although the closing statement stated that the seller had paid for the Transfer Stamp. The settlement agent (who also acted as the Totaros' attorney at the closing) said he would purchase the Transfer Stamp the next day. Although the settlement agent gave the Totaros the money for the Property, he never purchased a Transfer Stamp. For more than two years, the deed to the Property remained unrecorded, unbeknownst to the plaintiffs.

In the summer of 2004, Mr. Alcala learned that deed had never been recorded. Mr. Alcala attempted to obtain a building permit from Cicero. The permit was rejected because Mr. Totaro was still the recorded owner of the Property. Mr. Alcala then learned from his attorney that the deed had never been recorded. The Property was somehow scheduled for another inspection, which the Property again failed. Despite the fact that the Property never received a

Certificate of Compliance or a Transfer Stamp, another defendant somehow managed to record the deed in December 2004, allegedly in violation of state laws.

Based on these allegations, the plaintiffs bring four claims against defendants Chlada and Cicero.[1] In Count I, plaintiffs allege that Chlada and Cicero violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by applying to plaintiffs a Certificate of Compliance procedure that differed from the one applied to other purchasers in Cicero. Plaintiffs also allege that defendants wilfully and maliciously interfered with a building inspection. In Count II, plaintiffs allege that defendant Cicero had a systemic policy, custom or practice of utilizing and/or ignoring the building code to serve the political and pecuniary interests of Cicero's officials. In Count VI, plaintiffs allege that Cicero and Chlada conspired with the Totaros and Caruso to commit fraud against the plaintiffs by concealing from the plaintiffs the building code violations discovered by Vazquez and Leon. In Count IX, plaintiffs allege that pursuant to 745 ILCS 10/9-102 Cicero is liable to pay damages for Chlada's conduct. Cicero and Chlada have moved to dismiss these claims.

## II. Standard on a motion to dismiss

The Court may dismiss claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure where the plaintiffs fail "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiffs' favor. *McCullah v. Gadert*, 344 F.3d 655, 657 (7th Cir. 2003). On a motion to dismiss, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support

---

[1] Plaintiffs' claims against the other defendants are not at issue in this motion.

the claims." *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 724 (7th Cir. 2004) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

A claim brought under 42 U.S.C. § 1983 against a municipality is not subject to more stringent pleading requirements under Rules 8 and 9 of the Federal Rules of Civil Procedure than are other claims in federal court. *Leatherman v. Tarrant Cty. Narcotics Intell. & Coord. Unit*, 507 U.S. 163, 168-169 (1993). A plaintiff "need not plead facts; he can plead conclusions." *Jackson v. Marion Cty.*, 66 F.3d 151, 153 (7th Cir. 1995); *see also McCormich v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000) ("The smattering of phrases like 'highest policymaking officers' and 'widespread custom' throughout [plaintiff's] complaint is a common practice designed to ensure that the complaint will withstand scrutiny under liberal notice pleading. Some would assert that the inclusion of this language should be 'enough.' Others suggest that more is needed; that the facts included in the complaint must lead to the legal conclusions drawn. We believe that it is the former view, and not the latter, that *Leatherman* and its progeny support.").

## III. Discussion

### A. Count I

In Count I, plaintiffs assert a violation of the Equal Protection Clause. The Fourteenth Amendment to the Constitution provides, in relevant part, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." Pursuant to 42 U.S.C. § 1983, individuals have a private right of action for violations of the Fourteenth Amendment. Typically, a plaintiff alleges an equal protection claim by alleging disparate treatment based on membership in a protected class, such as race, gender or religion. *See McDonald v. Village of Winnetka*, 371 F.3d 992, 1002 n. 3 (7th Cir. 2004). Alternatively, an individual can bring an equal protection

claim as a member of a "class of one." *Id.* at 1001. To state an equal protection claim based on a class of one, one must allege: (1) that "he has been intentionally treated differently from others similarly situated"; and (2) that "there is no rational basis for the difference in treatment or the cause of the differential treatment is a 'totally illegitimate animus' toward the plaintiff by the defendant." *McDonald*, 371 F.3d at 1001.

In Count I, plaintiffs allege that they were subjected to a different Certificate of Compliance procedure than were other home buyers in Cicero and that Chlada and Cicero maliciously interfered with the building inspection. Plaintiffs allege that these actions were arbitrary and irrational. Finally, plaintiffs allege that these defendants were improperly motivated to reward Caruso for his and his family's financial contributions to Cicero politicians.

Defendants Cicero and Chlada make two arguments to dismiss Count I. First, they argue that Count I against Cicero and against Chlada in her official capacity must be dismissed because § 1983 cannot be premised on respondeat superior liability. Second, plaintiffs argue that Count I against Chlada in her individual capacity must be dismissed because she was not involved in the alleged violation.

The Court first considers defendants' respondeat superior argument. It is true that a municipality "cannot be held liable *solely* because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Department of Soc. Serv. of N.Y.*, 436 U.S. 658, 691 (1978) (emphasis in the original). Defendants, however, do not explain how plaintiffs' claim relies on a respondeat superior theory. Plaintiffs have sufficiently plead a "class of one" equal protection violation which does not seem (based on the allegations in the complaint) to rely on a respondeat superior theory. *See Anderson*

*v. Village of Oswego*, 109 F. Supp.2d 930, 935 (N.D. Ill. 2000). Furthermore, one of the alleged unlawful actors, Chlada, is alleged to be the Building Commissioner and, hence, is in charge of issuing Certificates of Compliance. This suffices as an allegation that her acts represent the official policy with respect to the Building Commission. Accordingly, the Court will not, at this time, dismiss Count I against Cicero and Chlada in her official capacity.

Defendants next argue that Count I against Chlada in her individual capacity must be dismissed because she was not involved personally in the alleged violation. Liability under § 1983 "does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) (quoting *Sheik-Abdi v. McClellon*, 37 F.3d 1240, 1248 (7th Cir. 1994)). Plaintiffs, however, have alleged that Chlada was involved in the alleged Equal Protection Violation. Specifically, plaintiffs allege that Chlada spoke to one of the inspectors, Leon, on the telephone and threatened him in an effort to get him to issue a "clean" inspection of the Totaros' property. Plaintiffs have put forth sufficient allegations to prevent dismissal on this issue at the pleadings stage.

For these reasons, the Court denies defendants' motion to dismiss Count I.

**B.     Count II**

In Count II, plaintiffs bring a claim under § 1983 against defendant Cicero for alleged violation of the Equal Protection Clause. In Count II, plaintiffs allege that Cicero had a "systematic policy, custom, or practice" of utilizing or ignoring the building code for political or pecuniary reasons, of failing to enforce the building code when it was inconvenient for campaign patrons and of selectively enforcing or ignoring the building code with the effect of depriving plaintiffs of their Fourteenth Amendment rights. Plaintiffs caption their claim as a *Monell* claim.

In *Monell v. Department of Soc. Serv. of N.Y.*, 436 U.S. 658 (1978), the Supreme Court described the circumstances under which a municipality could be held liable under § 1983. The Supreme Court explained that it is:

> when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 694. Thus, to state a claim under § 1983, a plaintiff must allege that:

> (1) the City had an express policy that, when enforced, causes a constitutional deprivation; (2) the City had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or (3) plaintiff's constitutional injury was caused by a person with final policymaking authority.

*McCormick v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000).

Defendants argue that plaintiffs fail to allege a causal link between the constitutional violation and their injury and that plaintiffs do not sufficiently back up their allegations with facts. Both the Supreme Court and the Seventh Circuit, however, have made it clear that plaintiffs can plead conclusions and need not supply additional facts to state a claim. *Leatherman*, 507 U.S. at 168-169; *McCormich*, 230 F.3d at 324. Accordingly, defendants' conclusory allegations (including their allegations that they were injured as a result of Cicero's conduct) suffice at this stage of the proceedings. The Court declines to dismiss Count II.

C. **Count VI**

In Count VI, plaintiffs allege that defendants Chlada and Cicero conspired with Caruso and the Totaros to conceal building code violations from plaintiffs with the intent

to cause a fraudulent Certificate of Compliance to be issued. Plaintiffs further allege (1) that defendants engaged in these actions knowingly, recklessly and with deliberate indifference to plaintiffs' rights and (2) that the actions caused injury to plaintiffs.

### 1. Statute of limitations

Chlada and Cicero argue that Count VI should be dismissed with respect to them because it is barred by an affirmative defense, specifically the one-year statute of limitations in 745 ICLS 10/1-206. Plaintiffs seek protection from the statute of limitations via the Illinois discovery rule, which "delays the commencement of the relevant statute of limitations until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused." *Hermitage Corp. v. Contractors Adjustment Co.*, 651 N.E.2d 1132, 1135 (Ill. 1995) (quoting *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 633 N.E.2d 627 (Ill. 1994)).

According to defendants, plaintiffs' claim is time-barred because they should have known no later than the date of the closing (July 11, 2002) that they had suffered injury. The Court is not convinced. Plaintiffs allege that they did not know of Chlada and Cicero's alleged involvement with the inspection until November 2004. In addition, the plaintiffs allege that they suffered injury in the summer of 2004 when they were unable to obtain a building permit given that their deed to the Property had not been recorded. Although it may become clear at subsequent stages of the litigation that some (or all) of this claim is time-barred, the Court cannot say at this time that plaintiffs could prove no set of facts that would result in a claim not barred by the statute of limitations.

### 2. Pleading conspiracy

Defendants also argue that plaintiffs allegations do not support a conspiracy claim. Under Illinois law, to allege a conspiracy to defraud, the plaintiffs must allege "(1) a conspiracy; (2) an overt act of fraud in furtherance of the conspiracy; and (3) damages to the plaintiff as a result of the fraud." *Bosak v. McDonough*, 549 N.E.2d 643, 646 (Ill. App. Ct. 1st Dist. 1989). A conspiracy is a "combination of two or more persons to accomplish by concerted action an unlawful purpose or a lawful purpose by unlawful means." *Id.* Defendants seem to argue that they did nothing wrong and, hence, plaintiffs' conspiracy claim should be dismissed with respect to them. But plaintiffs have alleged defendants' involvement in the alleged conspiracy: plaintiffs allege that Chlada, an employee of Cicero, interfered with the inspection of the Property in order to defraud plaintiffs. This suffices at the pleading stage.

### 3. Immunity

Finally, defendants summarize several Illinois statutes (745 ILCS 10/2-103, 10/2-104, 10/2-105, 10/2-205, 10/2-206 and 10/2-207) and argue that the statutes bar the conspiracy claim against Chlada and Cicero. Two of these statutes provide that a local public entity or a public employee, respectively, is "not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law." *See* 745 ILCS 10/2-103; 745 ILCS 10/2-205. Next, a public entity or a public employee, respectively, is "not liable for an injury caused by his failure or refusal to issue, deny, suspend or revoke, any permit, licence, certificate, approval, order or similar authorization where he is authorized by enactment to determine whether or not such authorization should be issued,

-10-

denied, suspended or revoked." *See* 745 ILCS 10/2-104; 745 ILCS 10/2-206. In addition, a public entity or a public employee, respectively, is "not liable for an injury caused by his failure to make an inspection, or by reason of making an inadequate or negligent inspection, of any property [other than one owned by it or its employer] for the purpose of determining whether the property complies with or violates any enactment or contains or constitutes a hazard to health or safety." *See* 745 ILCS 10/2-105; 745 ILCS 10/2-207. These statutes, however, "do not affect the right to obtain relief other than damages against a local public entity or public employee." *See* 745 ILCS 10/2-101.

Defendants do not explain how the conspiracy claim is barred by these statutes. Depending on the evidence put forth at a subsequent stage of the case, it may become clear that the claim is barred. Based on the allegations in the complaint, however, Count VI does not appear to be barred by these statutes. Plaintiffs allege a conspiracy to conceal building code violations, which is not barred by the plain language of any of the statutes defendants cite.

For these reasons, the Court will not dismiss Count VI.

**D.**     **Count IX**

In Count IX, pursuant to 745 ILCS 10/9-102, plaintiffs seek to hold defendant Cicero liable for the claims against Chlada. Defendants seek to dismiss this claim on the sole basis that the other claims (Counts I, II and VI) were dismissed. Because the Court denied the motion to dismiss Counts I, II and VI, it also denies the motion to dismiss Count IX.

**IV.	Conclusion**

For the reasons set forth above, the Court denies defendants' motion to dismiss.

ENTER:

*[signature: George M. Marovich]*

George M. Marovich
United States District Judge

DATED:12/16/05